**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

KBL CORP.,

                        **Plaintiff,**          08 Civ. 4873 (JGK)

            **- against -**                     OPINION AND ORDER

ROBERT A. ARNOUTS, ARNOUTS ASSOCIATES
ARCHITECTS, INC.,

                        **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

     The plaintiff, KBL Corp. ("KBL"), is a residential home builder in the New York area that has twice been sued by a popular national licensor of home designs, Frank Betz Associates, Inc. ("Betz"), for copyright infringement.  The plaintiff settled both lawsuits and now brings this action for contribution, indemnification, and inducement to infringe against the defendants, Robert A. Arnouts and Arnouts Associates Architects, Inc. (collectively "Arnouts"), licensed architects hired by the plaintiff in connection with the home designs at issue in the Betz litigations.  The defendants move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

I

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Twombly v. Bell Atl. Corp., 127 S. Ct. 1955, 1974 (2007); see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the Court is not required to accept legal conclusions asserted in the Complaint. See Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

II

The following facts as alleged in the Complaint are accepted as true for the purposes of this motion to dismiss.

The plaintiff is a residential home builder in the Poughkeepsie, New York area.  In the course of its business, the plaintiff engages licensed architects to provide services related to home designs and approval of proposed home plans. This is done in furtherance of complying with local laws and regulations as a precondition to receiving a Certificate of Occupancy for each home constructed.  (See Compl. ¶¶ 8-9.)

The defendants are New York-licensed architects specializing in home designs and home plans.  Specifically, the defendants are in the business of designing, drafting and modifying home plans, as well as marketing, advertising, and selling home plan designs through traditional print and Internet media.  (See Compl. ¶¶ 10-11.)

The plaintiff engaged the defendants for architectural services prior to 2002, and the defendants provided services to the plaintiff until 2005.  During that time period, prospective clients approached the plaintiff with proposed plans for home designs.  Some of these proposed plans bore no indication of their original source.  Others indicated that they were created by Betz, a popular national licensor of home designs.  As a matter of course, the plaintiff passed along all of the proposed

3

home plans that it received to the defendants for them to review, modify for compliance with local regulations, and approve.  (See Compl. ¶¶ 12-16.)

The plaintiff provides the following representative example of its dealings with the defendants.  The plaintiff received a photocopy of a proposed home design from a prospective client, through a broker.  The photocopy was of a home design by Betz known as "Charlemagne."  The design drawings included markings indicating that the design was the property of Betz.  The plaintiff contracted with the defendants to produce construction drawings from the photocopy.  The plaintiff raised with the defendants the possible need to obtain a license from Betz to use the Charlemagne design.  The plaintiff made inquiries as to whether the defendants' software was compatible with that of Betz.  The defendants assured the plaintiff that there was no need to purchase a license from Betz, because the finished plans would be significantly different from any version given to the plaintiff by the prospective client.  The defendants modified the design drawings, and defendant Robert Arnouts filed his own copyright applications for the modified designs.  Defendant Robert Arnouts advised the plaintiff to use the modified plans, and officially approved the plans.  The plaintiff proceeded to construct multiple homes using the drawings.  (See Compl. ¶¶ 17-23.)

On February 17, 2006, Betz filed a copyright infringement action against the plaintiff, No. 06 Civ. 1280.  Betz did not file suit against the defendants, but did accuse them of copyright infringement, and reached a settlement with them prior to commencing No. 06 Civ. 1280.  The plaintiff incurred legal fees and other business expenses as a result of defending the action.  The plaintiff ultimately chose to settle the action, agreeing to pay Betz $85,000.  However, the plaintiff failed to make the full payment, resulting in a judgment against it in the increased amount of $100,000.  The plaintiff paid the judgment in full.  (See Compl. ¶¶ 25-28.)

Following the dismissal of No. 06 Civ. 1280, Betz brought a second action against the plaintiff for copyright infringement, No. 07 Civ. 554, based on additional homes that the plaintiff had built that were not covered by the settlement in the first action.  The home designs at issue in this second action had been approved by the defendants in the same manner that the home designs in the first action had been approved.  In the second action, Betz sued the defendants for infringement as well as the plaintiff.  Once again, the plaintiff incurred legal fees and other business expenses in defending the suit.  Once again, it chose to settle the suit, agreeing to make a payment to Betz through its insurance carrier.  Following this settlement, Betz voluntarily dismissed the action, with the result that the

defendants did not pay a judgment or a settlement in No. 07 Civ.
554.  (See Compl. ¶¶ 29-34.)


III

The plaintiff alleges three causes of action against the
defendants: contribution, indemnification, and inducement to
infringe.  The Court addresses each cause of action in turn.


A

The plaintiff alleges that it is entitled to contribution
from the defendants under New York State common law for its
expenses in connection with the Betz litigations.  (See Compl.
¶¶ 1, 63.)  The plaintiff first points out that contributory
infringers may be held liable under the federal Copyright Act,
17 U.S.C. § 101 et seq.  See Matthew Bender & Co. v. West
Publ'g, 158 F.3d 693, 706 (2d Cir. 1998) ("[A] party who, with
knowledge of the infringing activity, induces, causes, or
materially contributes to the infringing conduct of another, may
be held liable as a 'contributory' infringer.") (internal
quotation marks omitted).  The plaintiff then argues that under
New York State common law and NY CPLR § 1401, it is entitled to
contribution from the defendants because the defendants were
contributory infringers under the Copyright Act.  The plaintiff
acknowledges that New York General Obligations Law ("GOL") § 15-

108(c) generally bars settling parties from raising contribution claims, but argues that an existing exception to § 15-108(c) for parties who reached post-judgment settlements should be extended to cover the plaintiff, because it felt compelled to settle both of the Betz actions.

The defendants argue that the Copyright Act does not provide for contribution among co-infringers, and therefore no action for contribution can lie in this case.  They further argue that in any event, GOL § 15-108(c) bars the plaintiff's contribution claim because the plaintiff settled both actions with Betz before any judgment was issued, and there is no basis for extending the existing exception to § 15-108(c) to cover the plaintiff.

The threshold issue is whether there is a right to contribution under the Copyright Act.  A right to contribution under a federal statute "may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution."  Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638 (1981) (citing Nw. Airlines, Inc. v. Transp. Workers, 451 U.S. 77, 90-91 (1981)).  Where a federal statute does not expressly create a right of action for contribution, "[t]he ultimate question . . . is whether Congress

7

intended to create [the remedy of contribution]." Nw. Airlines,
451 U.S. at 91. "Factors relevant to this inquiry are the
language of the statute itself, its legislative history, the
underlying purpose and structure of the statutory scheme, and
the likelihood that Congress intended to supersede or to
supplement existing state remedies." Id.

In general, "[c]ourts have held that no such [right to
contribution] exist[s] under either the Copyright Act or federal
common law." Elektra Entm't Group Inc. v. Santangelo, No. 06
Civ. 11520, 2008 WL 461536, at *2 (S.D.N.Y. Feb. 15, 2008); see
also Lehman Bros., Inc. v. Wu, 294 F. Supp. 2d 504, 504-505
(S.D.N.Y. 2003) (dismissing claim for contribution in a
copyright case and holding that judicial extension of federal
common law to create right of contribution would be
inappropriate because "Congress has otherwise legislated with
great particularity" in the Copyright Act); Artista Records,
Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 416 (D.N.J. 2005)
("[N]either the Copyright act nor federal common law recognize a
copyright infringer's right to contribution."); Zero Tolerance
Entm't, Inc. v. Ferguson, 254 F.R.D. 123, 126-27 (C.D.Cal. 2008)
(citing Elektra and Lehman Bros. and collecting cases).

The plaintiff offers no persuasive reason to find a right
of contribution for copyright infringement. The plaintiff has
failed to show that the Copyright Act explicitly provides for a

right to contribution among co-infringers, and indeed it is
plain from the face of the Act that it does not explicitly
provide for such a right.  See 17 U.S.C. § 501 (creating rights
of action for legal or beneficial owners of copyrights, and
providing certain other parties with standing to sue for
infringement, but not mentioning any right to contribution for
co-infringers).

Moreover, the legislative history of the Act reflects no
intention to create a right to contribution.[1]  The Supreme Court
has instructed that where a right of contribution is not
expressly stated in a statute, "[t]his omission, although
significant, is not dispositive if, among other things, the
language of the statute[] indicates that [it] w[as] enacted for
the special benefit of a class of which [the plaintiff] is a
member."  Nw. Airlines, 451 U.S. at 91-92 (footnote omitted).
But in this case, it could not be said that the plaintiff
belongs to a class Congress intended to protect in the Copyright
Act.  Quite the opposite: the purpose of the Copyright Act is to

---

[1]      The legislative history cited by the plaintiff only indicates an
intention on the part of Congress to make parties that contribute to the
infringement of a copyright liable to the holder of the copyright.  See H.R.
Rep. No. 94-1476, at 61 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5674
("The exclusive rights accorded to a copyright owner under section 106 are
'to do and to authorize' any of the activities specified in the five numbered
clauses.  Use of the phrase 'to authorize' is intended to avoid any questions
as to the liability of contributory infringers.  For example, a person who
lawfully acquires an authorized copy of a motion picture would be an
infringer if he or she engages in the business of renting it to others for
purposes of unauthorized public performance.").  This is plainly different
from an intention to create a right to contribution among co-infringers.

protect authors from infringers, see, e.g., Patterson v. Century Prods., 93 F.2d 489, 493 (2d Cir. 1937), and the plaintiff is an alleged infringer.  Cf. Nw. Airlines, 451 U.S. at 92 (holding that there is no implied right of action for contribution among employers under Equal Pay Act or Title VII, because, in part, "both statutes are expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees.").

There is every indication that if Congress had wished to provide a right of contribution under the Copyright Act, it would have done so explicitly, because the Act is otherwise comprehensive and detailed, and already includes a remedial scheme.  See 17 U.S.C. §§ 502-505 (creating remedial scheme for copyright infringement); see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (extending doctrine of complete preemption to Copyright Act because, among other things, Copyright Act provides a remedial scheme to address infringement); Lehman Bros. ("[In] the context of federal copyright law . . . Congress has otherwise legislated with great particularity as to liability, damages, remedies, and the like.").

Therefore, there is no basis to conclude that the Copyright Act provides for a right to contribution among co-infringers. Cf. Nw. Airlines, 451 U.S. at 94-95 (holding that there is no

implied right to contribution under the Equal Pay Act or Title VII because "we have been unable to discover any manifestation of an intent on the part of Congress to create a right to contribution in favor of employers under the Equal Pay Act and Title VII"); Tex. Indus., 451 U.S. at 639 (holding that federal antitrust laws do not provide a right of action for contribution, and explaining that "[t]he absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary"); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 143-44 (2d Cir. 1999) (holding that there is no right to contribution under the Fair Labor Standards Act because the statute makes no explicit provision for contribution; the statute was designed to protect employees, not co-liable employers; the statute has a comprehensive remedial scheme, and the legislative history of the statute does not mention a right to contribution); LNC Investments, Inc. v. First Fidelity Bank, Nat'l Assoc., 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) ("Because there is no evidence that Congress intended to create a right of contribution under the [Trust Indenture Act], or that Congress conferred on federal courts the power to create such a right, First Fidelity's application to file a claim for contribution under the [Trust Indenture Act] must be denied.").

There is also no basis to conclude that federal courts have established a right to contribution for co-infringers through federal common law.  "Federal common law may be created: (1) when necessary to protect 'uniquely federal' interests, and (2) when Congress has authorized federal courts to develop substantive federal law."  LNC Investments, 935 F. Supp. at 1343 (quoting Tex. Indus., 451 U.S. at 640).  There is nothing about the interest in protecting copyright infringers from paying more than their proportionate share of damages that is uniquely federal.  See Lehman Bros., 294 F. Supp. 2d at 505.  Moreover, "Congressional authorization to federal courts to create governing rules of law also is quite rare," LNC Investments, 935 F. Supp. at 1344, and there is no basis to infer such authorization with respect to the Copyright Act.

The plaintiff's effort to find a right to contribution in New York State law is unavailing.  "[W]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law."  Lehman Bros., 294 F. Supp. 2d at 505 n.1 (internal quotation marks omitted) (holding that plaintiff could not use New York State contribution provision to state cause of action for copyright infringement contribution); see Herman, 172 F.3d at 144 ("[F]ederal courts recognize a right to contribution under state law only in cases in which state law supplies the appropriate rule of decision.")

(internal quotation marks and alterations omitted); Elektra,
2008 WL 461536, at *2 (holding that claim for contribution will
only lie if Copyright Act creates right to contribution or
"right inheres as a matter of federal common law"); LNC
Investments, 935 F. Supp. at 1349 ("[T]here is no right to
contribution under the [Trust Indenture Act].  It follows that
there can be no right of contribution under New York law based
on alleged breach of the [Act].  The source of a right of
contribution under state law must be an obligation imposed by
state law."); W.R. Grace & Co.-Conn. V. Zotos Int'l, Inc., No.
98 Civ. 838, 2005 WL 1076117, at *9 (W.D.N.Y. May 3, 2005); see
also Nw. Airlines, 451 U.S. at 97 n.38 ("Of course, federal
courts, including this Court, have recognized a right to
contribution under state law in cases in which state law
supplied the appropriate rule of decision.  These cases are
inapposite here.") (internal citations omitted).  In this case,
the plaintiff brings a claim for contribution in connection with
a federal statutory scheme that does not provide a right of
action for contribution.  The plaintiff cannot use New York
State common law as an end-around to make a claim for
contribution that it could not make under the federal statutory
scheme.  Thus, the common law is unavailable to the plaintiff in
its bid to state a claim for contribution.

This case is distinguishable from Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. 138 (S.D.N.Y. 2003).  In Too, the Court allowed a copyright infringement defendant to file a third-party complaint seeking contribution under New York State law.  In that case, the plaintiff opposing the impleader did not argue that there was no right to contribution under the Copyright Act, or that state law could not be used to support a claim for contribution in connection with a copyright action.  Rather, the plaintiff in Too challenged the legal basis of the impleader by arguing that the putative third-party defendants' "involvement is too speculative or attenuated to entitle [the defendants] to contribution."  Id. at 141.  The plaintiff in that case, like the plaintiff here, confused the issue of whether an infringer can seek contribution against a co-infringer with the separate issue of whether an author has a claim for infringement against a contributory infringer.  The plaintiff in Too also argued that the third-party allegations lacked a factual basis, that the impleader would prejudice the putative third-party defendants, that the defendants had deliberately delayed their motion for impleader, and that the impleader would delay the trial.  Id. at 140.  The Court resolved each of the arguments raised in favor of the defendants, and granted the motion to file a third-party complaint for contribution on those grounds.  Thus, the issues at stake in this case were never squarely addressed in Too.  To

the extent that the Too decision can be read as supporting a right to contribution between co-infringers, it is contrary to the numerous well-reasoned decisions finding no such right.

In any event, even if the Court allowed the plaintiff to invoke New York State law to support its claim for contribution in this case, the plaintiff would still fail to state a claim. The right to contribution under New York State law is governed by N.Y. C.P.L.R. § 1401. See Barker v. Kallash, 468 N.E.2d 39, 43 (N.Y. 1984) ("CPLR 1401 . . . abolished the common-law rules of contribution . . . ."). Section 1401 of the C.P.L.R. provides: "Except as provided in section[] 15-108 [of the GOL] . . . two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. GOL § 15-108 provides, in relevant part: "A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." GOL § 15-108(c); see also, e.g., Farrell v. Gristede's Supermarkets, Inc., 857 N.Y.S.2d 83, 84 (App. Div. 2008) ("Accordingly, in light of [the defendant's] settlement with plaintiff, its cross claim for contribution . . . is barred by General Obligations Law § 15-108(c).") (collecting cases).

In this case, the plaintiff settled both of the litigations brought by Betz for which it now seeks contribution from the defendants.  Therefore, the plaintiff's claim is barred by GOL § 15-108(c).  As the plaintiff correctly points out, there is an exception to GOL § 15-108(c) for parties who reached a settlement post-judgment.  See GOL § 15-108(d) ("A release or covenant not to sue between a plaintiff or claimant and a person who is liable or claimed to be liable in tort shall be deemed a release or covenant for the purposes of this section only if . . . (3) such release or covenant is provided prior to entry of judgment."); see also Rock v. Reed-Prentice Div. of Package Mach. Co., 346 N.E.2d 520, 524 (N.Y. 1976) ("[GOL 15-108(c)] has no application to a claim for contribution which has been litigated and reduced to judgment."); Orsini v. Kugel, 9 F.3d 1042, 1046 (2d Cir. 1993) ("[GOL § 15-108(c)] was not intended was not intended to cover settlements entered into after the parties' respective liabilities have been apportioned and quantified in a judgment . . . .") (collecting cases).  However, the plaintiff settled both Betz litigations before any judgment or any apportionment of liability by a finder of fact.  Indeed, there was never any judgment or apportionment of liability by a finder of fact in either Betz litigation, for the very reason that the plaintiff chose to settle rather than defend the

actions.  Thus, the Rock exception to GOL § 15-108(c) does not apply in this case.

The plaintiff argues that its contribution claim is covered by the Rock exception, if not in a technical sense, then "at least in spirit," because the principle behind the exception is that the State Legislature never intended for an involuntary settlement – one made pursuant to judgment or pursuant to a fact-finder's apportionment of liability – to preclude contribution.  The plaintiff correctly identifies the principle behind the Rock exception.  See Rock, 346 N.E.2d at 524 ("The overall scheme and purpose of [GOL § 15-108] is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation.  There is nothing at all to suggest that this statute was ever intended to nullify a pre-existing judgment."); Orsini, 9 F.3d at 1047 ("Subsequent decisions of the New York courts have explained that section 15-108(c)'s waiver of contribution rights derives from the principle that money voluntarily paid by one person may not be recovered back . . . . A tortfeasor who settles after a determination of culpability and damages . . . is not a volunteer in any sense . . . .") (internal quotation marks omitted).  However, there is no basis to extend the Rock exception to cover the plaintiff.  The plaintiff's decisions to

settle the Betz litigations were plainly voluntary under the case law.  See Orsini, 9 F.3d at 1047 ("A tortfeasor who settles with a claimant by paying more than what turns out to have been his equitable share is deemed a volunteer as to the excess, and therefore cannot seek reimbursement as to that excess.").  The plaintiff's argument that its decisions to settle were somehow involuntary because it was sure it would be found liable if it defended the litigations has no support in the case law, and is without merit.  According to the allegations in its own Complaint and the arguments in its own motion papers, the plaintiff made strategic decisions to settle based on its assessment of the costs of litigation and the probability that it would be held liable.  This exercise of strategy was not involuntary.  See, e.g., Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice [sic] simply because his assessment of the consequences was incorrect.").  To extend the Rock exception to cover such strategic decisions to settle would allow the exception to swallow the rule set forth in GOL § 15-108(c).

For all of the foregoing reasons, the plaintiff cannot state a claim for contribution in this case.

B

The plaintiff claims that it is entitled to indemnification from the defendants under New York State common law for its expenses in defending the two Betz actions.[2] (<u>See</u> Compl. ¶¶ 1, 59.) The plaintiff argues that although there was no contract for indemnification between the parties, indemnification should be implied under New York State common law because the defendants were the liable parties in the Betz actions. The plaintiff supports this argument by pointing out that the defendants were licensed architects and the plaintiff was "simply a home builder," and that the defendants had an obligation to inform the plaintiff that building homes based on the Betz design plans would constitute copyright infringement, which they breached.

The defendants argue that the plaintiff has failed to state a claim for indemnification, because indemnification may only be implied under common law where the party seeking indemnification was without fault, and the plaintiff was not without fault in the conduct that led to its losses in the Betz litigations.

The parties do not dispute that the right to indemnification would be available to the plaintiff if it could meet the requirements for indemnification under New York State

---

[2]   The plaintiff correctly notes that its claim for indemnification is unaffected by the success or failure of its claim for contribution. <u>See</u> <u>Conrad v. Beck-Turek, Ltd., Inc.</u>, 891 F. Supp. 962, 966 (S.D.N.Y. 1995).

common law.  Because the validity of this assumption does not
affect the outcome of the case, the Court analyzes whether the
plaintiff can state a claim for indemnification pursuant to the
requirements of state law.  However, it should be noted at the
outset that courts holding that a state law right to
contribution is unavailable in connection with a federal
statutory scheme that does not itself provide for contribution,
often apply the same analysis to state law claims for
indemnification in connection with a federal statute that does
not itself provide for indemnification.  See, e.g., Herman, 172
F.3d at 143-44; Elektra, 2008 WL 461536, at *2; Zero Tolerance,
254 F.R.D. at 126-27; but see Orsini, 9 F.3d at 1048-49 ("The
right to indemnity, as distinguished from contribution, is not
dependent upon the legislative will.  It springs from a
contract, express or implied . . . .") (quoting McDermott v.
City of New York, 406 N.E.2d 460, 462 (N.Y. 1980); Conrad, 891
F. Supp. at 966 ("The New York Court of Appeals has emphasized
that contribution and indemnity are fundamentally different
claims . . . .").

Indemnification is a claim by which "the party held legally
liable shifts the entire loss to another."  Rosado v. Proctor &
Schwartz, Inc., 484 N.E.2d 1354, 1356 (N.Y. 1985).  It "arises
out of a contract which may be express or may be implied in law
to prevent a result which is regarded as unjust or

unsatisfactory." Id. (internal quotation marks omitted).  The
plaintiff does not claim that it had a contractual right to
indemnity.  In order for indemnification to be implied under
common law, a party must "establish[] that it cannot be held
responsible for the underlying injuries to any degree."
Buchwald v. Verizon, Inc., 860 N.Y.S.2d 360, 361 (App. Div.
2008); see also Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276,
1284 (2d Cir. 1996) ("New York case law supports a proposition .
. . that common-law indemnity is barred altogether where the
party seeking indemnification was itself at fault, and both
tortfeasors violated the same duty to the plaintiff . . . .").
Thus, "[a] party who has settled and seeks what it characterizes
as indemnification . . . must show that it may not be held
responsible in any degree."  Rosado, 484 N.E.2d at 1356-57.

     In this case, the plaintiff cannot establish that it was
without fault with respect to the underlying injuries to Betz.
According to the allegations in its own Complaint, the plaintiff
knew that the plans at issue in both Betz lawsuits originated
from designs that belonged to Betz, even before it gave the
plans to the defendants for modification and approval.  (See
Compl. ¶¶ 17-20.)  Indeed, the plaintiff alleges that it raised
copyright concerns with the defendants, suggesting to the
defendants that it might be necessary to obtain a license from
Betz to use the designs.  (See Compl. ¶ 18.)  Furthermore, in

21

its motion papers, the plaintiff argues: "[E]ven the briefest perusal of the materials depicting the frongs of the Frank Betz Associates' home as compared to the Arnouts'/KBL homes, reveals their striking similarity.  In fact, they are virtually identical." (Pl.'s Opp'n at 10.)  Thus the notion that the plaintiff was wholly reliant on the defendants to recognize that its actions might constitute infringements of Betz's copyrights is undermined by the plaintiff's own Complaint and motion papers.[3]  It is plain that the plaintiff in this case was aware of potential copyright issues but chose to ignore them, provided the copyrighted designs to the defendants, and proceeded with the construction of the homes upon receiving the defendants' approval.  Therefore, it is clear that the plaintiff bore at least some fault for any infringement of Betz's copyrights.[4]

For all of the foregoing reasons, the plaintiff cannot state a claim for indemnification in this case.

---

[3]     The plaintiff's allegation in its Complaint that it is a "respected and experienced builder," (Compl. ¶ 8), makes its total reliance on the defendants less plausible still.  See Piracci Constr. Co., Inc. v. Skidmore, Owings & Merrill, 490 F. Supp. 314, 320-21 ("As a general proposition, however, a contractor relies much less on an architect than does a lay client.").

[4]     Indeed, even had the plaintiff been unaware of potential copyright problems when it gave the proposed plans at issue to the defendants, it is far from clear that the plaintiff would be without fault for any resulting infringement of Betz's copyrights.  The plaintiff provides no discussion of what constitutes "fault" in an infringement.  Certainly, the plaintiff's unawareness would not have prevented it from being liable for infringement. See, e.g., Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005) (establishing requirements for proving copyright infringement).

C

The plaintiff also brings a claim for inducement to infringe against the defendants.  The plaintiff bases this claim on the allegation that the defendants "induced, caused, or materially contributed to the alleged infringing conduct of KBL Corp." (Compl. ¶ 53.)  The plaintiff argues that its claim for inducement to infringe is distinct from its claim for contribution.  The defendants argue that inducement to infringe is a species of contributory infringement under the Copyright Act, and therefore the plaintiff fails to state an inducement claim for the same reasons that it fails to state a claim for contributory infringement – namely, the Copyright Act does not provide for contribution among co-infringers.

The plaintiff has not identified any legal authority indicating that the Copyright Act provides for an inducement to infringe claim that is distinct from contributory infringement. Indeed, the case law supports the opposite conclusion.  See Cartoon Network LP, LLP v. CSC Holdings, Inc., 536 F.3d 121, 133 (2d Cir. 2008) ("If Congress had meant to assign direct liability to both the person who actually commits a copyright-infringing act and any person who actively induces that infringement, the Patent Act tells us that it knew how to draft a statute that would have this effect . . . . [T]he Supreme Court has strongly signaled its intent to use the doctrine of

23

contributory infringement, not direct infringement, to 'identify the circumstances in which it is just to hold one individual accountable for the actions of another.'") (quoting <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464 U.S. 417, 435 (1984)) (internal alterations omitted); <u>see also</u> <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ."); <u>Faulkner v. Nat'l Geographic Enters. Inc.</u>, 409 F.3d 26, 40 (2d Cir. 2005) ("'One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'") (internal alterations omitted) (quoting <u>Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2d Cir. 1971)).[5]

Because the plaintiff has failed to show that a claim for inducement to infringe can exist separately from a claim for contributory infringement, and a claim for contributory infringement under the Copyright Act cannot lie among co-

---

[5]    The cases cited by the plaintiff to support the existence of an independent claim for inducement arise under patent law, not copyright law. See <u>Oak Indus., Inc. v. Zenith Elecs. Corp.</u>, 697 F. Supp. 988 (N.D. Ill. 1988); <u>Water Techs. Corp. v. Calco, Ltd.</u>, 850 F.2d 660 (Fed. Cir. 1988); <u>Fromberg, Inc. v. Thornhill</u>, 315 F.2d 407 (5th Cir. 1963); <u>Haworth, Inc. v. Herman Miller, Inc.</u>, 37 U.S.P.Q. 2d 1080 (W.D. Mich. 1994); <u>Sims v. Mack Trucks, Inc.</u>, 459 F. Supp. 1198 (E.D.P.A. 1978).  The existence of an independent claim for inducement to infringe under the Patent Act, 35 U.S.C. § 1 <u>et seq.</u>, does not imply the existence of the same under the Copyright Act.  <u>See</u> <u>Cartoon Network</u>, 536 F.3d at 133.

infringers, the plaintiff cannot state a claim for inducement to
infringe.

## CONCLUSION

For the foregoing reasons, the plaintiff cannot state a
claim against the defendants for contribution, indemnification,
or inducement to infringe.[6]  Therefore, the defendants' motion to
dismiss in **granted**.  The Clerk is directed to enter judgment and
to close this case.

**SO ORDERED.**

Dated:    New York, New York
          February 7, 2009

                                        John G. Koeltl
                                 United States District Judge

---

[6]     At oral argument, counsel for the plaintiff suggested that the
plaintiff be given time to amend its Complaint.  However, the plaintiff did
not request leave to amend in its papers, and it has never submitted a
proposed amended complaint to the Court.  The plaintiff has never attempted
to show why any amended complaint would not be futile in view of the legal
insufficiency of its claims.  Moreover, the representation of plaintiff's
counsel that the plaintiff might be able to "piece together" the elements of
a claim after discovery is insufficient to justify leave to amend.  Discovery
is unwarranted where it would function as a "fishing expedition for evidence
in search of a theory that has yet to be asserted." In re Alper Holdings,
Inc., Nos. 07-12148, 08 Civ. 2489, 08 Civ. 3344, 08 Civ. 3625, 2008 WL
5251454, at *15 (S.D.N.Y. Dec. 15, 2008).  Indeed, allowing the plaintiff to
conduct discovery in order to piece together a claim would undermine the
purpose of Federal Rule of Civil Procedure 12(b)(6), which is to
"streamline[] litigation by dispensing with needless discovery and
factfinding" where the plaintiff has failed to state a claim under the law.
Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

25